[Crim. No. 6584. Second Dist., Div. Three. Oct. 19, 1959.]

THE PEOPLE, Respondent, v. JOE W. VON BRIMER, Appellant.

Joe W. Von Brimer, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—In a jury trial defendant was convicted of violating section 26104, subdivision (f), of the Corporations Code (selling a security without having a permit). He was also convicted on three counts of grand theft. Proceedings were suspended and probation was granted. Defendant appeals from the judgment, sentence, and order denying his motion for a new trial.

Appellant asserts that the judge was biased against him; the jury was not properly instructed; there were errors in rulings as to admissibility of evidence; the deputy district attorney was guilty of misconduct; and the reporter should have reported the argument of counsel for appellant. Appellant does not contend that the evidence was insufficient to support the verdicts.

Mr. Curry, the victim of the offenses, met appellant as the result of having read a newspaper advertisement. At that meeting in May, 1955, appellant said that he had a plan for developing an area which was about 2½ miles east of Palm Springs. Appellant exhibited the lot plan to Mr. Curry and took him to the area and pointed out the lots. Appellant said that he had an option on the lots and that he wanted $15,000 for a half interest in a corporation that he wanted to form for the development of the land. Mr. Curry said he would invest $10,000 for the purpose of acquiring the lots. Appel-

lant said that that amount of money would cover the amount needed to procure the lots. Appellant also said that it would take $30,000 to develop the lots; that Mr. Curry would get a one-third interest for the $10,000; the money would be used for picking up the option and acquiring the land so that construction could get started; appellant would have an agreement prepared and then they would meet again for the purpose of signing it. About a week later, appellant brought a "Pre-Incorporation Agreement" to Mr. Curry's home and asked that they form a corporation on the basis of that agreement. At that time, appellant also said he was about to pick up the option. Mr. Curry testified that he "agreed to the forming of the corporation," and that he paid $900 to appellant as earnest money. Then appellant signed the agreement. About a week later, when Mr. Curry paid an additional $100, appellant said, "We are starting proceedings to incorporate." About two weeks later, when Mr. Curry paid an additional $5,149.31, he said the remainder of the money was available but he wanted "an indication that construction could be started, that the land was purchased, that we are ready to do business." Appellant said that he would give a receipt for the total amount of $10,000. Then he gave a receipt to Mr. Curry for that amount. Two days later, when Mr. Curry paid an additional $2,950.69, he said that was the remaining money he had and he asked appellant if he was satisfied. (The total amount paid was $9,100.) Appellant replied in the affirmative. Soon thereafter appellant signed articles of incorporation. (The name of the corporation was Mardo, Inc.) Many times thereafter Mr. Curry asked appellant when he would start construction, and if he had the land, and what he was doing with Mr. Curry's money. Appellant replied that they were unable to get the land, and that they were trying to get started. The last time he had such a conversation with appellant was in October, 1955, just before appellant left town. Mr Curry never received any corporation stock or any dividend. He asked appellant to return the money, but no part of the money has been returned. The lots were never acquired by appellant or Mardo, Inc. The lots were conveyed, through the escrow, to John Kiss. Articles of incorporation and an application for a permit to issue stock were filed, but no permit to issue stock was issued.

In December, 1955, when appellant was in San Francisco, he wrote a letter to Mr. Curry wherein he stated that he had been in northern California and Nevada for some time; that

Mr. Curry had been fair and reasonable in the face of extreme delays; there was no need for a suit and that appellant would execute a note and stipulate to judgment by default; Mr. Curry would not get the profit which was promised but appellant had a client who would take over Mr. Curry's investment if Mr. Curry would be satisfied with only interest on his money; the "guilty parties on this deal" are both in a position to pay, and that Mr. Kiss would be "a sitting duck in a suit"; appellant was "sorry this project has gone this way"; he was processing Moonridge Estates (a project in the Big Bear area) under Mardo, Inc., "which will give you a ⅓ interest in the deal as we verbally agreed."

Some of appellant's testimony was in substance, as follows: He has been a partner of one Dabah in developing land in the Palm Springs area. Appellant had worked two and a half years in obtaining approval of the Federal Housing Administration and the Veterans' Administration with respect to land in that area. The 13 lots referred to by Mr. Curry were a part of that area so approved. The lots were involved in an open escrow (without a closing date) wherein Mrs. Notrica (owner) had placed a deed to each lot so that when Dabah paid for a lot the lot would be released to Dabah. Dabah assigned the "option" to appellant. At the first meeting with Mr. Curry, appellant showed the assignment to him. The document is in San Francisco (and was not produced at the trial). Appellant told Mr. Curry that his profit would be about 400 per cent on his investment. He regarded Mr. Curry as a partner in the venture. When appellant ran out of money he placed the advertisement in the newspaper. At the second meeting, appellant explained that the money he received from Mr. Curry was to pay for appellant's work and investment, and that Mr. Curry would receive a one-third interest in the business. Appellant gave a receipt for $10,000 when only $9,100 had been received, but at that time he had not added the amounts that had been paid. When he discovered that the $900 had not been paid, he mentioned that to Mr. Curry, who indicated that he would pay the $900. Appellant opened the escrow for the purpose of paying for the lots which were owned by Mrs. Notrica. The total amount owed therefor was $10,450, and appellant could get some money from Mr. Kiss. The escrow was not to be closed until a "letter of closure" was sent to the escrow by appellant. He did not know, until March, 1956, that the escrow had been closed and that the lots had been transferred by Mrs. Notrica

to John Kiss. In the last conversation with Mr. Curry, in October, 1955, appellant told him that he was unable to get the option from Kiss and that it would be necessary to commence a suit against Kiss. Mr. Curry replied that he was holding appellant responsible for the money. A suit was not filed because appellant suffered a physical injury. In 1958 appellant had returned to the Palm Springs area and was proceeding to renew the project which involved said lots.

Appellant asserts that the judge was biased against him because: (1) the judge did not properly consider appellant's claim that there was misconduct on the part of jurors; and (2) the judge made prejudicial remarks about appellant.

After the arguments to the jury had been made and before the jury had been instructed, counsel for appellant made a motion that the judge declare a mistrial upon the ground that there was misconduct on the part of two jurors. In support of the motion, appellant testified (in the absence of the jury) that during recess on the previous day, when he went to a window in the corridor near which three jurors (women) were standing, one of the jurors, said, "It isn't possible"; then another juror said, "Oh, oh, oh, oh, he is behind us." The judge asked, "Is that all you have?" There was no response to that question. Thereupon the motion was denied. Appellant argues that the judge, after hearing that testimony, should have asked "this juror" if she was discussing this case. The alleged remarks of the jurors might have referred to various things which did not pertain to the case. The fact that the judge did not question the jurors, who allegedly made those remarks, did not establish that the judge was biased against appellant. If appellant considered that a juror should be questioned regarding the incident, he could have requested the judge to ask such questions or to grant appellant permission to ask the questions. The evidence was not legally sufficient to prove misconduct of a juror. The conduct of the judge with respect to the motion for a mistrial did not establish that he was biased against appellant.

When appellant was testifying regarding the conduct of the jurors he said that he thought the jurors were the number 1 juror "who is wearing a pink dress today (the day after the incident)," and the number 3 juror. After the judge had denied the motion for a mistrial, the jury returned to the courtroom and the judge gave the instructions. After the jury had retired for deliberations, the judge said that in view of the representation made to the court that juror

number 1 or 2 or 3 had a pink dress, the record should show that the only juror with a pink dress was juror number 10. Appellant argues to the effect that such remark shows that the judge was biased against him. There is no merit to the argument. Appellant had testified that he thought that one of the jurors was juror number 1 "who is wearing a pink dress today." The judge was merely placing of record the information that the only juror who was wearing a pink dress, on the day the appellant was identifying the jurors, was juror number 10.

After the appellant had been found guilty by the jury, and while the judge was considering whether appellant should be permitted to remain "on bail" pending the hearing of his application for probation, the judge said to appellant: "You are not going out and selling any more phony real estate, are you?" On another day thereafter, while the judge was considering a motion to vacate an order forfeiting bail, the judge said: "You have been a slicker all of your life, Von Brimer, and I am glad the law finally caught up with you." At that time, the judge also said that appellant was a bunco artist, and that appellant had "to pull the same game" in the army. Appellant argues to the effect that those remarks were prejudicial and showed that the judge was biased against him. The remarks were made after the verdicts were returned, and of course the remarks could not have any prejudicial effect upon the deliberations of the jury. The remarks were made in connection with pending questions relating to bail. The judge, in considering those questions, was entitled to state his views of the evidence with respect to appellant's integrity and moral responsibility. His unfavorable estimate of appellant, made under such circumstances, is not to be construed as indicating that appellant was denied a fair trial by reason of bias on the part of the judge.

On cross-examination, appellant was asked what he did with the money he obtained from Mr. Curry. In replying thereto appellant made unresponsive answers about receipts which Mr. Curry had, and about check stubs and keeping the books. The deputy district attorney asked appellant to answer the question and not to tell what Mr. Curry did. Counsel for appellant said that appellant should be allowed to answer. The judge said, "If he will answer it." Appellant asserts that the remark of the judge shows that the judge was biased against him. No objection was made to the remark. The remark was not prejudicial.

■ Appellant contends further that the court. did not properly instruct the jury in that all the instructions requested by the prosecution were given and none of the instructions requested by appellant were given. He argues that it was a violation of his constitutional rights not to give any of his instructions. He does not refer specifically to any instruction, and he does not assert that any given instruction was erroneous. Ten of the instructions (from California Jury . Instructions—Criminal) which were requested by the prosecution (and were given) were also requested by appellant. Appellant does not point out in what respect the failure to give any instruction requested by him was prejudicial. It is not a requirement that the court give one or more of the instructions requested by an accused. The jury was properly instructed.

■ Appellant's contention to the effect that the court erred in rulings as to admissibility of evidence is not sustainable. Appellant asked a witness, who was in charge of escrows at a bank, the following question: "And what would the general import be if you were to see a name on certain escrow papers and then that name scratched out." An objection thereto was sustained. Other questions asked by appellant were as follows: "I will ask you if you can reach any conclusion from that"; and "Does your escrow record show that there was some difficulty in closing the escrow?" Objections thereto were sustained. The questions called for conclusions. The escrow file was in evidence. The court was not required to regard the witness as an expert who was qualified to give an opinion on the matters involved in those questions.

■ Appellant asserts that the deputy district attorney was guilty of misconduct by reason of statements which he made in his argument to the jury. The deputy made a statement to the effect that testimony of the appellant that he was an engineer was misleading—that he was not even a high school graduate. There was evidence that appellant was not a high school graduate and that he did not have a degree in engineering. The statement of the deputy did not constitute misconduct.

■ In his argument, the deputy said ·that the law in the case would be given by the judge, and that if the deputy made a statement of law which was different from a statement of law by the judge, the jurors should disregard the deputy's statement. Appellant contends that the deputy was guilty of

misconduct in that he was instructing the jury. This contention is without merit.

■ Also in his argument, the deputy said that a document (Masters Certificate of Reasonable Value) was unsigned; that a document referred to land in Whittier; and that appellant's testimony regarding certain land was misleading. The photostatic copy of the document regarding value (which copy was in evidence) was unsigned, and the other document did refer to land in Whittier. No objection was made to the argument by the deputy. Such argument did not constitute misconduct.

■ Appellant also contends that the deputy made a prejudicial remark while he was cross-examining appellant. The deputy had asked appellant if it was not true that only three checks from a check book were in Exhibit B. Appellant had answered, as follows: "This is the one that matches this stub." Then the deputy said: "When you talk like that, nobody can make any sense out of it in this record." Appellant asserts that the last remark of the deputy was prejudicial. No objection was made to the remark. Previously the appellant had made unresponsive answers to other questions. The remark should not have been made, but it cannot be said that it was prejudicial.

■ Appellant also contends that error was committed because the reporter did not report the argument of appellant's counsel. Appellant did not request that such argument be reported. Under the circumstances, the reporter was not required to report that argument. This contention is not sustainable.

Affirmance of the judgment carries with it affirmance of the sentence.

The judgment (order granting probation) and the order denying the motion for a new trial are affirmed.

Shinn, P. J., concurred.